**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

JULIANA McCULLOUGH,

        :

    Plaintiff

        :

    v.                                            Civil Case No. L-10-2537

        :

LIBERTY HEIGHTS HEALTH &
REHABILITATION CENTER, et al.,    :

    Defendants              :

o0o
**<u>MEMORANDUM</u>**

Plaintiff Juliana McCullough brings this tort action against her former employer, Liberty Heights Health & Rehabilitation Center, and its operator, Liberty Leasing Co. LLC (collectively "Liberty Heights"). Now pending before the Court is Liberty Heights's Motion for Summary Judgment. Docket No. 31. The issues have been comprehensively briefed, and no hearing is deemed necessary. <u>See</u> Local Rule 105.6 (D. Md. 2011). For the reasons stated herein, the Motion will be GRANTED.

## I.      BACKGROUND

The following facts are stated in the light most favorable to McCullough as the non-moving party. At the time of the events in question, McCullough was employed as a Unit Nursing Manager at Liberty Heights. Sometime in early June of 2010, McCullough began searching for a housekeeper, and a friend recommended Judith Chase. McCullough contacted Chase, and Chase began working for McCullough at McCullough's residence.

Soon thereafter a dispute arose between McCullough and Chase over the payment of

wages.  The specifics of that disputed are not relevant here.  The morning of June 16, 2010,

Chase telephoned McCullough to say that she was coming to McCullough's office to discuss

payment.  McCullough objected, and protested that any such discussion should take place over

the phone.  At no point did McCullough tell anyone at Liberty Heights about her dispute with

Chase or Chase's threat to show up there.  In specific, McCullough never expressed concern or

requested that Liberty Heights take measures to protect her against Chase, such as denying Chase

entry to the building.

At approximately 12:30 p.m. Karen Marshall, a Liberty Heights employee, was leaving

the facility for a meeting when she noticed McCullough and Chase fighting in the parking lot.

According to Marshall, Chase attempted to get into her car, on both the driver's and passenger's

side, but McCullough repeatedly pulled her from the vehicle.  When the confrontation

degenerated into blows and hair pulling, Marshall went inside and informed Sandra Durham,

Liberty Heights' Executive Director.

Durham went to investigate and found the two women yelling at one another.  She

stepped between the two, ordered McCullough to go back inside, and told Chase to leave the

premises.  Instead, Chase said something to the effect of "I want my money" and struck Durham

in the forehead.  The record provides scant detail of the ensuing altercation, but eventually the

police were summoned and restored order.  McCullough emerged with bruises and a bite to her

right index finger.

Following the incident Durham suspended McCullough and, following an investigation,

terminated her employment.  The stated bases for termination were insubordination, in the form

of McCullough's refusal to heed Durham's orders to return inside, and engaging in workplace

violence.  See Def.'s Mot. Summ. J. Ex. 1B.

Soon thereafter, McCullough filed the instant suit against Liberty Heights. Her Amended Complaint contains four counts: Negligence (Count I), Vicarious Liability (Count II), Battery (Count III), and Loss of Consortium (Count IV). McCullough argues that Liberty Heights had a duty to provide a safe work environment, which it breached by allowing Chase to attack her. McCullough further argues that Durham committed battery by attempting to restraining her during the fight with Chase. Liberty Heights now moves for summary judgment on all claims.

## II.    LEGAL STANDARD

The Court may grant summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986); see also Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987) (recognizing that trial judges have "an affirmative obligation" to prevent factually unsupported claims and defenses from proceeding to trial). Nevertheless, in determining whether there is a genuine issue of material fact, the Court views the facts, and all reasonable inferences to be drawn from them, in the light most favorable to the non-moving party. Pulliam Inv. Co. v. Cameo Props., 810 F.2d 1282, 1286 (4th Cir. 1987).

## III.    ANALYSIS

### a. Vicarious Liability and Loss of Consortium

Two of McCullough's claims may be dealt with summarily. First, Count II of the Amended Complaint purports to state a claim for "Vicarious Liability." Vicarious liability is, of

3

course, not an independent cause of action, but rather a theory of assigning liability.  See, e.g., Radbod v. Arias, No. RDB 10-897, 2011 WL 630752 at *3 n. 3 (D. Md. Feb. 11, 2011) (citing Williams v. Prince George's Cnty., 685 A.2d 884, 895 (Md. Ct. Spec. App. 1996)).  Count II is, therefore, not really a claim at all.

Second, Count IV of the Amended Complaint seeks recovery for Loss of Consortium.  It is black letter law that loss of consortium is an injury to the marital unit and that, as such, it may only be brought as a joint action by both spouses.  Deems v. W. Maryland Ry. Co., 247 Md. 95, 115 (1967); see also Butcher v. Robertshaw Controls Co., 550 F. Supp. 692, 705 (D. Md. 1981) ("The law is clear in Maryland that a claim for loss of consortium is brought to recover for injury to the marital unit, and is brought by both spouses for the injury to them both . . . .") (citing Deems).  Despite this obvious requirement, McCullough's husband, Ben Nwakamma, has not been made a party to this action.  Liberty Heights is, therefore, entitled to summary judgment on Count IV.[1]

## b.  Negligence and Battery Claims.

Count I of the Amended Complaint charges negligence on the part of Liberty Heights. McCullough alleges that "[t]here have been numerous crimes and criminal activities at liberty Heights health and Rehabilitation Center in particular and in Baltimore City in General," and maintains that Liberty Heights was under a duty to provide security guards or otherwise protect the facility.  Am. Compl. 4–5, Docket No. 12.

Count III seeks to hold Liberty Heights liable for the alleged battery committed by Sandra Durham in restraining McCullough.  McCullough claims that Durham "in an attempt to

---

[1]     Even if Mr. Nwakamma were made a party, McCullough could not recover.  Her loss of consortium claim is predicated on her underlying negligence claim, which fails for reasons discussed infra.

stop the fight held Mrs. McCullough and restrained her long enough for her to be bitten on her index finger & bruises inflicted all over her body by her attacker," and that "[s]uch restraining of the Plaintiff's body by Ms. Durham was intentional, harmful & offensive."

It is unlikely that McCullough could succeed on the merits on either of these counts. As to her negligence claim, McCullough has offered no comprehensible explanation as to why Liberty Heights should be held liable for an apparently unforeseeable attack arising from a personal dispute. Cf., Jackson v. A.M.F. Bowling Ctrs., Inc., 128 F. Supp. 2d 307, 311 (D. Md. 2001) (business owner's duty to protect invitee from risks arising out of intentional or criminal acts of third parties does not require owner to take precautions against a sudden attack from a third person which he has no reason to anticipate); McGuiness v. Brink's Inc., 60 F. Supp. 2d 496, 499 (D. Md. 1999) (even if duty is owed, unforeseeable criminal acts of a third party break the chain of causation, relieving the original negligent actor of liability); Corinaldi v. Columbia Courtyard, Inc., 873 A.2d 483, 493 (Md. Ct. Spec. App. 2005) (innkeeper has a duty to take affirmative action to protect guests from assault by a third party only if, in exercise of due care, he knew or should have known that the assault was imminent, well enough in advance to have prevented it).

Chase was not a stranger committing a random attack on McCullough. McCullough and Chase were involved in a wage dispute that had no connection with Liberty Heights. McCullough knew that Chase was coming, voluntarily went to the parking lot to meet her, and even physically prevented her from leaving by pulling her from her car. As mentioned, McCullough ever told Liberty Heights that Chase was coming, or that Chase might pose a threat.

Nor does the record contain any evidence that the parking lot of Liberty Heights was a generally dangerous place, other than McCullough's own anecdotal testimony that she once

5

witnessed a carjacking.  McCullough's opposition brief claims that "[o]n several occasions clients have engaged in the breach of peace against each other and police had to be called to provide peace and order" and that "[t]here have been reports of cars and other personal properties stolen within the premises and compounds of the employer's facility," but she provides no support whatsoever for these assertions.  Pl.'s Opp. 9, Docket No. 34.  Similarly, McCullough claimed at deposition that a camera outside the building was not working, but she has offered no evidence on this point.  In fact, McCullough has submitted no evidence <u>of any kind</u>.  The entire record is composed of submissions by Liberty Heights in connection with its Motion for Summary Judgment.

McCullough's battery claim would fare no better.  Durham should be commended for risking her own safety.  She attempted to prevent a fight and received a blow to the head for her efforts.  Nevertheless, McCullough has sued her for battery, apparently on the sole premise that that some touching was objectionable "[b]ecause she prevented me from hitting back." McCullough Dep. 113:8–9.

In order to constitute a battery, a touching must be harmful or offensive.  A touching is offensive if it offends the plaintiff's "reasonable sense of personal dignity."  <u>Robinson v. Cutchin</u>, 140 F. Supp. 2d 488, 492 (D. Md. 2001) (<u>quoting</u> MPJI 15:2).  While the question whether a touching satisfies this test is normally one left to the jury, defense of another is a recognized defense in a battery action.  <u>See</u> <u>Womack v. Tierco Md. Inc.</u>, 38 Fed.Appx. 850, 855 (4th Cir. 2002).  As it currently stands, the record supports only one reasonable inference: that Durham was attempting to protect the two combatants from one another.

The Court need not reach the merits of these claims, however, because the Maryland Workers' Compensation Act ("WCA") preempts all such tort action against an employer.  MD.

CODE ANN. LAB. & EMPL. § 9–101 et seq.  The WCA provides the exclusive remedy to an employee for an injury or death arising out of and in the course of employment.  WCA § 9–509; Demby v. Preston Trucking Co., 961 F. Supp. 873, 881 (D. Md. 1997) (quoting Lagrimas v. Gossel, No. HAR 92–2262, 1993 WL 18951, at *3 (D. Md. Jan. 25, 1993)); see also Tynes v. Shoney's Inc., 867 F. Supp. 330, 332 (D. Md. 1994).

An employee's right to sue her employer for negligence in failing to use reasonable care to provide a safe workplace was abolished in 1914 when Maryland passed its first workers' compensation law.  Lagrimas, 1993 WL 18951, at *3.  The exclusivity of the WCA applies not only to hazards that might be considered normal incidents of one's job, but to the deliberate and unlawful acts of third parties as well.  For example, in Edgewood Nursing Home v. Maxwell, 282 Md. 422 (1978), a nursing home employee was shot by her estranged paramour while at work.  The Maryland Court of Appeals found the WCA applicable, stating,

> The injury is work-related in the sense that even though it arose for personal reasons not attributable to the working environment, it occurred within the course of employment on the employer's premises at a time when the employee was obliged to be present and at work; in other words, the employee's presence at the nursing home when the peril struck was a necessary part of her employment and the injury was inflicted in the course of that employment.

Id. at 430.  Similarly, in Giant Food, Inc. v. Gooch, 245 Md. 160 (1967), a parking lot attendant was shot and wounded in the parking lot of his store shortly before he was to begin work.  The Court of Appeals concluded that the WCA applied to his claims, holding that the injury need not have arisen out of the claimant's employment so long as it was incurred in the course of that employment.  See id. at 165.

Under this standard, McCullough's injuries were clearly suffered in the course of her employment. The WCA preempts her claim against Liberty Heights for any injuries suffered at Chase's hands.

The WCA likewise precludes McCullough's battery claim. The WCA is an employee's exclusive remedy for injuries inflicted by the employer or co-employees unless the injury is shown to be the result of "the deliberate intent of the employer to injure or kill the covered employee." WCA § 9–509(d). Proof of an employer's willful, wanton, or reckless conduct, even when that conduct is undertaken with a knowledge and appreciation of a high risk to another, does not suffice to bring employer's conduct within intentional tort exception to Maryland Workers' Compensation Act's normal exclusivity rule. Gantt v. Security, USA, 356 F.3d 547, 555 (4th Cir. 2004) (citing Johnson v. Mountaire, Farms of Delmarva, 305 Md. 246 (1986)).

There is no suggestion that Durham's actions were taken with the intent of injuring McCullough. In fact, all indications are to the contrary. Durham stepped between the two women and attempted to keep them apart, while telling McCullough to go back inside the building.[2] McCullough's battery claim against Liberty Heights, therefore, fails as a matter of law.

---

[2]    Even when a plaintiff is deliberately injured by a fellow employee, the WCA precludes suit unless the employer itself can only be said to have had the deliberate intent to injure. This requires that the offending employee's actions be attributable to the employer. Tynes v. Shoney's Inc., 867 F.Supp. 330, 332 (D. Md. 1994). Whether a fellow employee's intentional wrongdoing can be attributed to the employer depends on a number of factors, including: (1) the status of the employee in the corporate (or other) hierarchy of the employer, (2) the extent to which his wrongful conduct could be expected to flow from his position, (3) the nature of the wrongdoing, and (4) any prior notice that the employer had of the employee's proclivity to do wrong. Id. at 333. Because Dunham's actions in this case, even if attributable to Liberty Heights, evidenced no intent to injure McCullough, the Court need not delve into such an analysis.

### c. Judicial Estoppel

In further support of its Motion for Summary Judgment, Liberty Heights asserts that McCullough should be judicially estopped from bringing any of her claims because she failed to disclose her interest in the instant proceedings when she filed for bankruptcy in 2010.[3] It cites, among others, the case of <u>Calafiore v. Werner Enter., Inc.</u>, 418 F. Supp. 2d 795 (D. Md. 2006), for the proposition that when a debtor fails to list a potential claim in a bankruptcy petition—or fails to amend that petition when the claim becomes known—the doctrine of judicial estoppel can bar the debtor from bringing that claim in a later proceeding.

What Liberty Heights fails to note, however, is that in <u>Calafiore</u> this Court made clear that the judicial estoppel bar in such a case applies to some forms of money damages but not to others. "To the extent any aspect of the damages the plaintiff seeks would have been exempt in the bankruptcy case, the plaintiff lacked the necessary motive to conceal his claim, and he will not be judicially estopped from seeking those kinds of damages." <u>Id.</u> at 799. Under Maryland's bankruptcy exemption schedule, damages for pain and suffering and loss of future earnings are exempt, while damages for lost wages, prepetition medical expenses, injuries to property, and punitive damages are not. <u>Id.</u>; MD. CODE ANN. CTS. & JUD. PROC. § 11-504(b).

McCullough's Amended Complaint seeks $800,000 in compensatory damages and $1,000,000 in punitive damages, but provides no further specificity. It is likely that some components of McCullough's claimed compensatory damages would be exempt, though other components—as well as her claim for punitive damages—would not be. Because the Court finds that McCullough's claims fail as a matter of law, however, it need not conduct the additional

---

[3]      See <u>In re: Juliana A. McCullough</u>, No. 10-2D488-JS (Bankr. D. Md. 2010).

exercise of determining which elements of those claims she might be judicially estopped from asserting.

### d. Possibility of Sanctions

McCullough has made no effort to so much as address, let alone refute, most of the arguments made by Liberty Heights.   The brief in opposition to Liberty Heights's Motion for Summary Judgment, which was prepared by McCullough's professional, retained counsel, Vincent U. Iwudike, contains an "argument" section stretching not quite three full pages.  Apart from a few bald factual assertions, it is comprised of largely unexplained quotations from inapposite case law dealing with the concept of constructive notice.  Nowhere does McCullough's counsel so much as acknowledge the existence of the WCA, let alone offer any reason why it should not bar his client's claims.  Similarly, Mr. Iwudike has chosen simply to ignore Liberty Heights's dispositive argument regarding his client's loss of consortium claim, as well as the entire issue of judicial estoppel.  Furthermore, as mentioned above, Mr. Iwudike submitted not a single piece of evidence in support of his client's case.  In essence, the Court has been forced to consider this case as though McCullough were proceeding pro se.

Rule 11(b) of the Federal Rules of Civil Procedure provides that

> By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

(3) the factual contentions have evidentiary support or, if specifically
so identified, will likely have evidentiary support after a reasonable
opportunity for further investigation or discovery.

A legal contention violates Rule 11 when it "has absolutely no chance of success under the existing precedent," and is unsupported by any "non-frivolous argument" for deviating from that precedent.  See In re Sargent, 136 F.3d 349, 352 (4th Cir. 1998); Fed. R. Civ. P. 11(b)(2).

The Court may assume that Mr. Iwudike did not know that his case was fatally flawed from the outset (though, assuming some minimal level of preliminary research, it is difficult to imagine what his good-faith basis for bringing suit might have been).  What is most distressing, however, is that when presented with unassailable legal authority at the summary judgment stage, Mr. Iwudike persisted.  He made no attempt to distinguish the cases cited by Liberty Heights, or to argue that there was good reason to modify or reverse existing law.  He certainly did not concede.  Rather, he chose to disregard settled law altogether and to file a frivolous and unsupported opposition.

As this Court recently noted,

> A license to practice law brings with it substantial responsibilities, and one of those is an obligation of prudence when bringing and pressing a claim. Attorneys are entitled, and sometimes even obligated, to sail into shallow waters as investigation and discovery reveal weaknesses in the factual and legal theories of a case. However, once the ship has not just bumped a shoal or two, but instead has collided with rocks and begun taking water, the voyage is over and counsel is required to drop his sails.

Moody v. Arc of Howard County, Inc., Civil No. JKB–09–3228, 2011 WL 2671385 at *9 (D. Md. July 7, 2011) (awarding sanctions for failure to dismiss frivolous claims when presented with a Rule 11 notice).

This may be a case in which sanctions are appropriate to deter Mr. Iwudike from further prosecution of meritless claims.  Nevertheless, a district court's award of sanctions is

11

discretionary, and Liberty Heights has not moved for them.  The Court does not wish to draw Liberty Heights into further proceedings if it wishes simply to be done with the case.  If, however, Liberty Heights wishes to pursue sanctions, it may so move within 14 days of the date of this Memorandum.

## IV.   CONCLUSION

For the foregoing reasons, the Court will, by separate Order of even date, GRANT Liberty Heights's Motion for Summary Judgment.  Docket No. 31.

Dated this 10th day of November, 2011

/s/

_____
Benson Everett Legg
United States District Judge